UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY KARL BLACKWELL,<br><br>  Plaintiff,<br><br>  v.<br><br>A. JENKINS, et al.,<br><br>  Defendants. | No. 2:19-cv-0442 TLN DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendant conducted or directed several retaliatory searches of his cell, in violation of his rights under the First and Eighth Amendments. Before the court is defendant Jenkins' fully briefed motion for summary judgment.[1] (ECF No. 96.) For the reasons set forth below, the undersigned will recommend that the motion for summary judgment be granted.

**BACKGROUND**

**I.      Relevant Procedural History**

Plaintiff initiated this action on March 13, 2019. On November 11, 2019, the court dismissed plaintiff's complaint with leave to amend for failure to state a claim. (ECF No. 19.)

---

[1] Plaintiff has a pending motion for reconsideration. (ECF No. 94.) He asks the assigned district judge to vacate the undersigned's previous order denying his motions to compel. (ECF No. 91; see also ECF No. 103.)

1

Plaintiff subsequently filed the first amended complaint. (ECF No. 22.) The court determined that plaintiff stated cognizable retaliation and Eighth Amendment claims against defendant Jenkins, and plaintiff opted to proceed on these claims, voluntarily dismissing all other claims and defendants. (ECF Nos. 29, 30.) After discovery, defendant filed the instant motion for summary judgment. (ECF No. 96). Plaintiff filed an opposition (ECF No. 108), and defendant filed a reply. (ECF No. 111.)

## II. Allegations in the First Amended Complaint

As screened, the first amended complaint alleges defendant Jenkins, a correctional officer at Mule Creek State Prison, conducted several searches of plaintiff's cell, or directed other correctional officers to search his cell. (ECF No. 22 at 10–22.) The searches occurred on the following dates in 2019: February 2, March 30, April 16, July 27, September 11, November 10, and November 13.[2] (Id.) Plaintiff believes these searches were retaliation for plaintiff filing a grievance against defendant for an earlier search he conducted of plaintiff's cell on December 30, 2018. (Id. at 10–11.)

### A. February 2, 2019 Search

Plaintiff claims that, on February 2, 2019, defendant "sent" two other correctional officers to search plaintiff's cell. (ECF No. 22 at 13.) Defendant allegedly arrived during the search and subsequently removed an eight-ounce container of liquid from his cell. (Id. at 12.) Plaintiff claims it was apple juice, Kool-Aid, and water, but correctional staff determined it was alcohol. (Id. at 11–12.) As a result of this determination, plaintiff lost credits of 120 days, ninety days of pay, thirty days of dayroom time, and "C over C-status." (Id. at 13.) He further claims that this incident resulted in a denial of a parole recommendation from the parole board. (Id. at 25.)

Although defendant's name does not appear in prison records documenting the search, plaintiff believes he "was the main conspirator" because the officers who conducted the search "follow [defendant] around, and do what he asks them to do." (Id. at 17.)

////

---

[2] Plaintiff states that defendant left his post on March 30, 2019 to search plaintiff's cell and provides a copy of a cell search slip for a search conducted on that date, but does not make additional allegations regarding this search. (ECF No. 22 at 10, 115.)

Plaintiff claims to have seen defendant at his cell during the search and that it was defendant who found the container later determined to contain alcohol. (Id. at 12.) He states that "[t]here are several witnesses that will attest" to defendant being at plaintiff's cell that day. (Id. at 21.)

### B. April 16, 2019 Search

Shortly after the February 2 search, defendant arrived at plaintiff's cell to deliver legal mail and found ice cream and bags of candy outside plaintiff's cell door.[3] (ECF No. 22 at 14.) Defendant then "kicked" these items "down the tier" to another officer. (Id.)

### C. July 27, 2019 Search

On another date, defendant allegedly entered plaintiff's cell and confiscated ramen soups and oyster packs from plaintiff's cell, but falsely claimed that these items had been left in front of his cell door.[4] (ECF No. 22 at 14.) Plaintiff states he filed a grievance, but later withdrew it. (Id. at 15.) He also claims that a second watch sergeant expressed concerns about defendant's tactics and returned five ramen soups to plaintiff. (Id.)

### D. September 11, 2019 Search

Plaintiff claims that on September 11, 2019, defendant came to his cell, told the tower officer to open plaintiff's cell, sat on plaintiff's bunk, and then watched television "while riffling through the lockers." (ECF No. 22 at 16.) Plaintiff claims that defendant took two candy bars and left without leaving a cell search slip. (Id.)

### E. November 10, 2019 Search

Plaintiff claims that defendant directed two other officers to search plaintiff's cell on November 10, 2019. (ECF No. 22 at 18.) The officers confiscated plaintiff's Sony CD player, rotary shavers, and headphones. (Id.) Plaintiff states that he arrived at Mule Creek State Prison with these items and that they were reflected on his property card. (Id.)

////

---

[3] Plaintiff's opposition to the motion for summary judgment clarifies that this event took place on April 16, 2019. (ECF No. 108 at 36, 41.)

[4] According to plaintiff's opposition, this search took place on July 27, 2019. (ECF No. 108 at 26, 128.)

3

**F. November 13, 2019 Search**

Three days later, defendant searched plaintiff's cell and confiscated an RCA-brand television that plaintiff had authorization to possess. (ECF No. 22 at 18.) According to plaintiff, defendant falsely claimed on the cell search slip that the television was a contraband, thirteen-inch Hiteker-brand television. (Id.) Defendant also allegedly smashed the television after plaintiff told him he had filed the instant action against him, and later told plaintiff that he had taken the television to his house. (Id.) Plaintiff further alleges that during this search, defendant removed personal food items and deliberately spilled water on plaintiff's legal documents. (Id. at 22.)

**G. Other Allegations**

Plaintiff also claims that defendant would "cause trouble" between his cellmates and him by harassing his cellmates based on their association with plaintiff. (ECF No. 22 at 16.) Later, after the cellmates were relocated to new cells, defendant would tell them: "Now that you moved, you won't have to worry about it because of your last celly." (Id.) Plaintiff understood defendant as saying that the cellmate would not "be harassed any longer [now] that he moved." (Id.)

On November 15, 2019, defendant allegedly told plaintiff that he wrote plaintiff up for "a 115 disciplinary for actions leading to violence." (Id. at 18.) Plaintiff believes that defendant was trying to "incite" him and "to anger" him. (Id.)

**MOTION FOR SUMMARY JUDGMENT**

**I.    Parties' Filings**

In the motion for summary judgment, defendant denies any role in the February 2 and November 10 searches, and denies searching plaintiff's cell on September 11. (ECF No. 96 at 11–13, 16–19.) He argues that the remaining searches did not constitute retaliation or violate plaintiff's Eighth Amendment rights because they served a legitimate penological purpose. (Id. at 20–24.) Further, defendant argues that this action is precluded under the favorable termination rule articulated in Heck v. Humphry, 512 U.S. 477 (1977), and that he is entitled to qualified immunity. (Id. at 24–29.)

////

4

In response, plaintiff filed a 228-page opposition with exhibits, in which he generally repeats the allegations in the first amended complaint. (See ECF No. 108.) Additionally, he provides declarations from four other prisoners describing their own interactions with defendant. (Id. at 186–89.)

## II. Summary Judgment Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

////

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Servs. Co., 391 U.S. 253, 289 (1986)).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 F. App'x 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

### III. Undisputed Material Facts

Defendant filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a) along with the motion for summary judgment. (ECF No. 96-3.) Plaintiff's filing in opposition to defendant's motion for summary judgment fails to comply with Rule 260(b). (See ECF No. 37.) Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."

Plaintiff appears to have copied the DSUF by hand, but where defendant organized his facts into two tables and labeled the second column of each table "Undisputed Facts" and "Undisputed Conclusion of Law," plaintiff altered the table by labeling the second column "Disputed Facts" and "Disputed Conclusion of Law." (ECF No. 96-3; ECF No. 108 at 56–65.) He also added his own table of "undisputed facts," many of which he fails to support with record citations. (ECF No. 108 at 56–71.) In light of plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact in defendant's statement of undisputed facts.

The court is mindful of the Ninth Circuit's instruction that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition that have evidentiary support in the record will be considered.

**A. The Parties**

Plaintiff is a California inmate formerly housed in Facility C, at Mule Creek State Prison (MCSP) at all times relevant to the first amended complaint. (DSUF (ECF No. 96-3) at ¶ 1.)

During the relevant period, from December 2018 to November 2019, defendant was assigned to Facility C, at MCSP as a security patrol officer. (DSUF (ECF No. 96-3) at ¶ 2.)

**B. Defendant's Alleged Conduct**

### 1. December 30, 2018 Search

Defendant conducted a search of plaintiff's cell on December 30, 2018. (DSUF (ECF No. 96-3) at ¶¶ 5, 6.)

Defendant claims to have discovered five plastic Folgers Coffee containers filled with a brownish liquid substance with odor consistent with inmate manufactured alcohol, and one pound of substance that had chunks of potatoes, apples, oats, and socks, which is commonly referred to as the "kicker" and is used to brew inmate manufactured alcohol. (DSUF (ECF No. 96-3) at ¶ 6.)

Correctional staff determined that the liquid inside the containers was inmate manufactured alcohol. (DSUF (ECF No. 96-3) at ¶ 7.)

Plaintiff was found guilty of Rules Violation Report (RVR) No. 6265465, and received a ninety-one day credit loss. (DSUF (ECF No. 96-3) at ¶ 8.)

### 2. February 2, 2019 Search

Plaintiff alleges in the first amended complaint that on February 2, 2019, defendant "sent" correctional officers Barkiewicz and Prakash to "harass, vex, annoy, and search" him. He further claims that defendant took a small Folgers Coffee container with Kool-Aid, apple juice, and water in it, resulting in plaintiff being falsely found guilty of a RVR for possession of alcohol. (DSUF (ECF No. 96-3) at ¶ 9.)

After Officers Barkiewicz and Prakash conducted the cell search on February 2, 2019, plaintiff was issued an RVR, No. 6436874, for possession of alcohol on this date. (DSUF (ECF No. 96-3) at ¶ 11.)

Plaintiff was subsequently found guilty of RVR No. 6436874 and received a credit loss. (DSUF (ECF No. 96-3) at ¶ 13; ECF No. 22 at 13.)

On February 5, 2019, plaintiff submitted a grievance, Log No. MCSP-19-00710, alleging that the Senior Hearing Officer inappropriately found him guilty of RVR No. 6265465 for possession of alcohol on December 30, 2018. The grievance claimed that he was found guilty of the RVR due to "false evidence." (DSUF (ECF No. 96-3) at ¶ 15.)

////

8

### 3. April 16, 2019 Search

Plaintiff also alleges in the first amended complaint that defendant kicked food items that were placed outside of plaintiff's cell down the tier to Officer Barkiewicz. (DSUF (ECF No. 96-3) at ¶ 17.) California Department of Corrections and Rehabilitation policy and the California Code of Regulations do not permit inmates to keep food outside of their cell, nor do they permit inmates to exchange gifts or other property. (DSUF (ECF No. 96-3) at ¶ 18.)

Defendant confiscated the food items that were left outside plaintiff's cell door. (DSUF (ECF No. 96-3) at ¶ 19; ECF No. 22 at 14; ECF No. 108 at 36, 41.)

### 4. July 27, 2019 Search

Plaintiff alleges that on July 27, 2019, defendant entered his cell and confiscated Top Ramen soups and oyster packs, and falsely claimed on the cell search slip that these items had been located outside plaintiff's cell door. (ECF No. 22 at 14; ECF No. 108 at 26.)

### 5. September 11, 2019 Search

On September 11, 2019, plaintiff claims that defendant entered his cell, sat on his bunk, watched television, looked through his lockers, and took two candy bars without leaving a cell search document. (DSUF (ECF No. 96-3) at ¶ 20.)

### 6. November 10, 2019 Search

On November 10, 2019, plaintiff claims that defendant instructed Officers Vaught and Johnson to go to plaintiff's cell and take "as much as they could." Plaintiff further claims that Officers Vaught and Johnson took plaintiff's Sony CD player even though plaintiff has documentation showing that he purchased it. (DSUF (ECF No. 96-3) at ¶ 27.)

### 7. November 13, 2019 Search

On November 13, 2019, plaintiff claims that defendant returned to his cell to take his RCA television. (DSUF (ECF No. 96-3) at ¶ 30.)

Defendant discovered that plaintiff was in possession of a Hiteker television that was not reflected on his property card. He confiscated the television. (DSUF (ECF No. 96-3) at ¶ 32; ECF No. 108 at 20–21.)

////

9

**8. Other Alleged Conduct**

Plaintiff also alleges that defendant would stop inmates talking with plaintiff, and "cause trouble" with his cellmates by informing them he was doing so because of their association with plaintiff. (DSUF (ECF No. 96-3) at ¶ 24.)

On November 15, 2019, plaintiff alleges that defendant approached him and tried to "incite" him by stating that he would be receiving an RVR for "actions leading to violence." (DSUF (ECF No. 96-3) at ¶ 35.)

**IV. Discussion**

**A. Legal Standards**

**1. Retaliation**

To plead retaliation in violation of the First Amendment and to recover under 42 U.S.C. § 1983, a plaintiff must show: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2004). Examples of adverse actions are "'exercise[s] of governmental power' that are 'regulatory, proscriptive, or compulsory in nature' and have the effect of punishing someone for his or her speech." Id. (quoting Laird v. Tatum, 408 U.S. 1, 11 (1972)). Direct or circumstantial evidence can demonstrate that a defendant intended to inhibit free speech. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300-01 (9th Cir. 1999).

To rise to a constitutional violation, the defendant's adverse action "must be of a nature that would stifle someone from speaking out." Blair v. Bethel Sch. Dist., 608 F.3d 540, 544 (9th Cir. 2010). "[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that his speech was actually inhibited or suppressed, but rather that the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities." Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Rhodes, 408 F.3d at 568–69) (internal quotation marks omitted) (emphasis omitted). This court has previously held that confiscating personal food items does not meet this standard. See Brown v. Kavanaugh, No.

1:08–cv–01764 LJO BAM PC, 2012 WL 4364120, at *12 (E.D. Cal. Sep. 21, 2012) (defendant's confiscation of plaintiff's burritos was a "minimal harm" that was "insufficient to chill the First Amendment rights of a person of ordinary firmness."). Additionally, verbal harassment or abuse is "not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).

### 2. Eighth Amendment

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend VIII. For a prisoner to prevail on an Eighth Amendment claim, "the complained of conduct 'must be objectively, 'sufficiently serious.''" Teahan v. Wilhelm, No. 06cv15 JM (PCL), 2007 WL 5041440, at *4 (S.D. Cal. Dec. 21, 2007) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[C]ourts have determined that frequent and retaliatory cell searches which result 'in the violent dishevelment of [the prisoner's] cell' and cause the prisoner to suffer 'fear, mental anguish, and misery' constitute an Eighth Amendment violation." Chevere v. Johnson, 38 F.3d 1220 (Table), 1994 WL 577554, at *2 (10th Cir. Oct. 17, 1994) (quoting Scher v. Engelke, 943 F.2d 921, 924 (8th Cir.1991)) (second alteration in original).

### B. Analysis

#### 1. Retaliation

Plaintiff alleges that defendant conducted retaliatory searches of his cell, or directed other correctional officers to conduct such searches, and harassed plaintiff because plaintiff filed grievances against him. For reasons discussed below, the undersigned has determined that defendant is entitled to summary judgment as to plaintiff's retaliation claim.

#### a. Alleged confiscation of personal food items

Plaintiff alleges that on the following dates in 2019, defendant wrongfully confiscated personal food items from plaintiff:

- April 16: Plaintiff claims defendant confiscated ice cream and candy bars located outside plaintiff's cell. (ECF No. 22 at 14; ECF No. 108 at 36, 41.)
- July 27: Defendant allegedly confiscated Top Ramen soups and oyster packs from plaintiff's cell. (ECF No. 22 at 14; ECF No. 108 at 26, 128.)

11

1             • September 11: Plaintiff claims that defendant confiscated two candy bars from his cell
2                without leaving a cell search slip.  (ECF No. 22 at 16.)
3        Regarding the April 16 incident, defendant states, and plaintiff confirms, that the ice
4  cream and candy were located outside plaintiff's cell door.  (ECF No. 96 at 20; ECF No. 108 at
5  16.)  According to defendant, he properly confiscated these items because state regulations
6  prohibit prisoners from keeping personal food items outside their cells.  (ECF No. 96 at 20 (citing
7  Cal. Code Regs. tit. 15, § 3190(i)).)  Defendant does not address the alleged July 27 search and
8  denies searching plaintiff's cell on September 11.  (ECF No. 96-1, ¶ 8.)
9        Here, the harm alleged, confiscation of personal food items, is "insufficient to chill the
10 First Amendment rights of a person of ordinary firmness."  Brown, 2012 WL 4364120, at *12.
11 Defendant is therefore entitled to summary judgment as to the April 16, July 27, and September
12 11 searches.

**b.  February 2, 2019 Search**

14       In the first amended complaint, plaintiff alleges that the February 2 search was retaliation
15 for filing a grievance against defendant over the December 30, 2018 search.  (ECF No. 22 at 10–
16 11.)  However, defendant states that plaintiff did not submit the grievance until February 5, 2019,
17 and filed a copy of the grievance with his motion for summary judgment.  (ECF No. 96 at 20;
18 DSUF (ECF No. 96-3) at ¶ 15; ECF No. 96-2 at 41.)  Plaintiff confirms this timeline in his
19 opposition, stating that defendant's alleged harassment "started once Plaintiff filed his first 602
20 grievance, on February 5, 2019."  (ECF No. 108 at 4.)  Therefore, the February 2 search could not
21 have been retaliation for grieving the December 2018 search.
22       Plaintiff has also failed to link defendant to the February 2 search or to show that it lacked
23 a legitimate penological purpose.  Plaintiff claims to have witnessed defendant participate in the
24 search.  (ECF No. 22 at 12–13.)  He states that other inmates observed defendant participate as
25 well, but does not provide declarations from them or identify their names.  (Id. at 21; ECF No.
26 108 at 10.)  Similarly, exhibits filed with the first amended complaint show that plaintiff's
27 cellmate was present for the search, but that plaintiff failed to call him or any other witnesses
28 when he challenged the RVR.  (ECF No. 22 at 63–64, 72.)  Plaintiff's "[c]onclusory allegations

12

unsupported by factual data" cannot create a genuine dispute as to defendant's involvement. Burchett v. Bromps, 466 F. App'x 605, 606 (9th Cir. 2012) (quoting Marks v. United States, 578 F.2d 261, 263 (9th Cir. 1978)) (alteration in original).

Regarding the search's purpose, the officer who wrote the RVR stated that he initiated the search after he smelled fermented fruit as he passed plaintiff's cell. (ECF No. 22 at 72.) He implies that the scent put him on notice that plaintiff or his cellmate may have been in possession of inmate-manufactured alcohol, though he does not directly say so. (Id.) He and another officer then discovered and confiscated what prison officials determined was inmate-manufactured alcohol. (Id.) Inmates cannot possess or use alcohol and doing so constitutes a serious rule violation. Cal. Code Regs. tit. 15, § 3315(a)(2)(D). On this basis, the search advanced a legitimate penological goal. Summary judgment is appropriate as the February 2 search.

### c. November 10, 2019 Search

Plaintiff claims that on November 10, defendant directed two other correctional officers to search plaintiff's cell and to "take as much as they could." (ECF No. 22 at 18.) Defendant denies any role in the November 10 cell search. (ECF No. 96-1, ¶ 10.)

Plaintiff does not offer any evidence that defendant played a role in the November 10 search, which he must prove to prevail on his constitutional claims. Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury."). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322–23. Because plaintiff has not provided proof of defendant's role in the November 10 search, there is no genuine dispute of material fact and defendant is entitled to summary judgment.

////

**d. November 13, 2019 Search**

Defendant denies conducting the November 13 search to retaliate against plaintiff. He states that he initiated the search because he had been "instructed by the Investigative Services Unit at MCSP to conduct a cell search for names and phone numbers of Plaintiff's cell mate." (ECF No. 96-1, ¶ 11; ECF No. 96 at 14.) Plaintiff disputes this explanation, stating that his cellmate's "property was never touched," but does not offer any evidence refuting defendant's justification for the search or indicating a retaliatory purpose. (ECF No. 108 at 21.) As a result, plaintiff has not demonstrated a triable issue of fact as to defendant's motive for conducting the November 13 search. Burchett, 466 F. App'x at 606. Defendant is therefore entitled to summary judgment as to this search.

**e. Other alleged retaliatory conduct**

Finally, plaintiff also claims that defendant tried to create tension between his cellmates and him by targeting plaintiff's cellmates for harassment, and that this conduct led to arguments between his cellmates and him. (ECF No. 22 at 16; ECF No. 108 at 45.) Plaintiff believes defendant's goal was for plaintiff's cellmates to attack plaintiff. (ECF No. 108 at 12.) Plaintiff further alleges that defendant tried to "incite" him on November 15, 2019 when he told plaintiff that he had filed a disciplinary report against plaintiff. (ECF No. 22 at 18.)

Defendant denies harassing plaintiff's cellmates or associates. (ECF No. 96 at 13.) He believes plaintiff's allegations regarding the November 15 incident may refer to an incident on November 13, during which plaintiff "approached him in an aggressive manner and yelled 'you punkass fucker.'" (Id. at 23.) Plaintiff was subsequently issued an RVR. (Id.)

Even taking plaintiff's allegations as true, the alleged incident on November 15 amounts to verbal harassment, which is not actionable under 42 U.S.C. § 1983. Oltarzewski, 830 F.2d at 139. Further, plaintiff has not shown that defendant's alleged conduct toward his cellmates went beyond mere harassment, because he has not shown that it created a risk to his safety. Cf. Valandingham v. Bojorquez, 866 F.2d 1135, 1139 (9th Cir. 1989) (finding a triable issue of fact over "whether defendants targeted [plaintiff] for inmate retribution [for filing grievances] by identifying him as a 'snitch,'" thereby exposing him to a risk of physical harm from other

14

1    inmates).  Thus, plaintiff's remaining allegations are not actionable.

2        **2. Eighth Amendment**

3      Plaintiff claims that defendant violated his Eighth Amendment rights when he allegedly
4    conducted multiple retaliatory searches of plaintiff's cell, and directed other correctional officers
5    to search plaintiff's cell on February 2 and November 10.  As discussed above, plaintiff has failed
6    to establish a causal connection between defendant and the February 2 and November 10
7    searches.  Additionally, plaintiff has not alleged that defendant searched his cell on April 16;
8    instead, he states that defendant confiscated items located outside plaintiff's cell door.  As such,
9    in assessing this claim, the undersigned will consider only the searches conducted on the
10   following dates: July 27, 2019; September 11, 2019; and November 13, 2019.

11     Even assuming for the sake of argument that defendant conducted these searches to
12   retaliate against plaintiff, three searches in eleven months is not sufficient to prove an Eighth
13   Amendment violation.  Courts have typically required searches to be more numerous and frequent
14   than alleged here to violate the Eighth Amendment.  See Scher v. Engelke, 943 F.2d 921, 924
15   (8th Cir. 1991) (ten cell searches in nineteen days sufficient to establish Eighth Amendment
16   violation); Allen v. Ferrel, No. 11–cv–01424 CMA MJW, 2013 WL 1222127, at *12 (D. Colo.
17   Feb. 13, 2013) (four searches in two months not sufficient to establish Eighth Amendment
18   violation on summary judgment); Banks v. Beard, No. 2:03CV659, 2006 WL 2192015, at *11
19   (W.D. Pa. 2006) ("[L]ess than a handful of searches over the period of several months . . . fail to
20   rise to a frequency and level that will support an Eighth Amendment violation."); see also Teahan
21   v. Wilhelm, No. 06cv15 JM (PCL), 2007 WL 5041440, at *5 (S.D. Cal. 2007) (collecting cases).

22     Plaintiff has also failed to allege that these searches resulted in the "violent dishevelment"
23   of his cell or caused him to suffer "fear, mental anguish, and misery."  Chevere v. Johnson, 38
24   F.3d 1220 (Table), 1994 WL 577554, at *2 (10th Cir. Oct. 17, 1994) (quoting Scher, 943 F.2d at
25   924).  Plaintiff does not describe the state of his cell following defendant's searches.  He alleges
26   that officers "dishevel[ed] everything" during the November 10 search, but this description is
27   insufficient to establish an Eighth Amendment violation, nor is there evidence linking defendant
28   to this search.  (ECF No. 108 at 19.)  Similarly, he accuses defendant of "riffling" through his

1 lockers and spilling water on his legal papers on September 11, but falls short of alleging a
2 "violent dishevelment" of his cell. (ECF No. 22 at 16.) See Allen, 2013 WL 1222127, at *3, 12
3 (search of plaintiff's cell was not sufficiently violent to violate the Eighth Amendment, where
4 plaintiff claimed defendant had "trashed the place"); Teahan, 2007 WL 5041440, at *6 ("Plaintiff
5 was yelled at by Defendant Wilhelm and his personal items strewn about his cell. Yet, thus is life
6 in prison.").

Finally, plaintiff's pleadings and opposition make clear that these searches disconcerted and angered him, but not that they caused the type of suffering that constitutes cruel and unusual punishment. For example, they did not render him so fearful that he ceased filing grievances or avoided possessing contraband, such as the inmate-manufactured lighter and "stinger" confiscated from his cell on November 10, or the Hiteker television he admits to possessing. (See ECF No. 108 at 20–21, 110, 120, 129, 212–225.) He does not allege that these searches resulted in adverse health effects like anxiety or depression.

Accordingly, defendant is entitled to summary judgment as to plaintiff's Eighth Amendment claim.

### 3. Heck Bar

Defendant argues that this action is barred under Heck v. Humphry, 512 U.S. 477 (1977), because a ruling in plaintiff's favor would reverse three rules violation reports that affected the duration of plaintiff's sentence. (ECF No. 96 at 25–26.) The undersigned has determined that defendant is entitled to summary judgment on the merits of plaintiff's claims, and therefore declines to reach this question.

### 4. Qualified Immunity

Defendant also asserts qualified immunity. He argues that plaintiff cannot show that defendant violated his constitutional rights, and that a reasonable prison official would not have known that defendant's conduct constituted retaliation. (ECF No. 96 at 28–29.) Because the undersigned has determined that defendant is entitled to summary judgment on the merits of plaintiff's claims, the court need not decide whether he was entitled to qualified immunity. See O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016); Moreland v. Las Vegas Metro. Police

Dep't, 159 F.3d 365, 371 n.4 (9th Cir. 1998).

**CONCLUSION**

IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 96) be granted; and

2. The Clerk of the Court be directed to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 24, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:15
DB/DB Prisoner Inbox/Civil Rights/S/blac0442.msj fr